UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**MO RASHAD**                                                                 **PLAINTIFF**

v.                                                                     No. 3:24-cv-142-BJB

**WESTMORE CARRIERS**                                          **DEFENDANT**

\* \* \* \* \*

### OPINION & ORDER GRANTING MOTION FOR LEAVE TO AMEND IN PART, DENYING MOTION TO STRIKE, AND DENYING MOTION TO DISMISS

 Mo Rashad began working at Westmore Carriers in March 2023 as a commercial driver. Two months later, according to this lawsuit, Rashad sustained an unspecified injury that limited his ability to haul freight between Kentucky and Tennessee, as he previously had. Westmore fired Rashad less than a month later, leading Rashad (acting on his own behalf without a lawyer) to file this lawsuit against Westmore. The complaint asserted discrimination and retaliation claims under the Americans with Disabilities Act (ADA) and Kentucky Civil Rights Act (KCRA). DN 1. After an agreement between the parties, Rashad filed an amended complaint (DN 30). He now asserts three claims: discrimination under the ADA, racial discrimination under Title VII of the Civil Rights Act, and retaliation under the KCRA.

 Westmore moved to dismiss (DN 31) the amended complaint for failure to state a claim under FED. R. CIV. P. 12(b)(6).

### A. Motion to Strike

 After Westmore's motion was fully briefed, and without asking permission, Rashad filed an additional reply brief (DN 39). That submission attached (for the first time) medical records, contracts, and affidavits in support of his claims. Westmore moved to strike the additional reply under FED. R. CIV. P. 12(f) as an improper "sur-reply" that this Court's rules don't authorize. DN 40. That led Rashad to file another brief in opposition (DN 41), arguing that the sur-reply included important facts and details that excuse the filing from Rule 12(f) scrutiny.[1]

---

[1] The attachments include what appear to be affidavits from a supervisor, coworker, and doctor that provide robust factual support for his allegations. *See* Sur-reply (DN 39-2; 39-3; 39-4).

1

Normally those extra briefs and the exhibits attached to them wouldn't be allowed. But because Rashad is a *pro se* litigant and presented this potentially significant information before the motion was decided, the Court will construe that sur-reply as a motion for leave to amend his complaint.

The law leaves ample discretion for judges to either refuse to consider such a sur-reply or consider it in the interests of justice. *See Reynolds v. Elizabeth*, No. 1:11-cv-P142, 2016 WL 1047796, at *1 (W.D. Ky. Mar. 10, 2016) (allowing sur-reply for *pro se* litigant in similar circumstances). True, "[n]either the Local Rules of this jurisdiction nor the Federal Rules of Civil Procedure permit the filing of sur-replies as a matter of right." *Vaughn v. Hawkins*, No. 5:14-cv-99, 2018 WL 2210873, at *2 (W.D. Ky. May 14, 2018); *see* W.D. KY. LOCAL R. 7.1(c) (full briefing schedule for a motion includes only a response brief and reply brief).

Importantly, though, if the Court considers information outside of the complaint in evaluating the motion to dismiss, it must treat the motion as one for summary judgment instead. *See* FED. R. CIV. P. 12(d); *Caraway v. CoreCivic of Tennessee, LLC*, 98 F.4th 679, 688 (6th Cir. 2024) ("Faced with matters outside the pleadings, district courts have complete discretion to accept them (and treat the motion as one for summary judgment) or ignore them (and treat the motion as one to dismiss).") (internal quotation marks omitted).[2] Further, the Court must allow the other party "notice and opportunity to respond" to new facts or arguments raised for the first time in a reply brief (to say nothing of a sur-reply and its attachments). *Seay v. Tennessee Valley Authority*, 339 F.3d 454, 481 (6th Cir. 2003).

To avoid either ignoring potentially compelling factual allegations from Rashad *or* forcing Westmore to litigate based on unpled facts—both unduly harsh outcomes—the Court will construe Rashad's nonstandard *pro se* filings as a request to amend his pleadings under Rule 15 to add this new factual information. *See, e.g.*, *Hart v. Tyree*, 944 F.2d 904 (6th Cir. 1991) (unpublished table opinion) (construing a "letter requesting substitution of parties" as motion to amend); *Gonzalez v. Palmiter*, No. 4:13-cv-P123, 2014 WL 1686777, at *1 (W.D. Ky. Apr. 29, 2014) (construing motion to supplement as motion to amend). Under Rule 15(a)(2), the Court "should freely give leave when justice so requires." Amending rather than striking helps further the Civil Rules' goal of "ensur[ing] the determination of claims on their merits." *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987). Under this "liberal policy" the law adopts for *pro se* litigants, *id.*, amendment is not obviously futile: with

---

[2] Rule 12(d) does not contain express exceptions, but the Sixth Circuit has applied a less stringent standard for *pro se* litigants and considered "as part of the [complaint]" information first included in a *response* to a motion to dismiss. *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (quotation marks omitted).

2

one exception discussed below, a hypothetical amended complaint that incorporated the retaliatory allegations reflected in the sur-reply attachments could well survive a motion to dismiss under Rule 12(b)(6).

Accordingly, the Court denies Westmore's motion to strike and grants Rashad's implicit request for leave to amend in part. Consistent with the discussion below, Rashad may file a second amended complaint within 40 days.

### B. Rashad's Allegations

Rashad's story, which the Court accepts as true at this stage, emerges from his first amended complaint, response to Westmore's motion to dismiss, sur-reply, and attached exhibits. His disability dates to 2006, when the combination of an insect bite and emergency surgery led to chronic lymphedema that still afflicts Rashad today. Amended Complaint ¶ 7. The condition limits his ability to walk, stand, or ambulate; he uses a crutch to relieve pain and pressure. Sur-reply (DN 39-3) at 4. But he could still drive: Rashad has maintained his commercial driver's license and received all required medical clearances since 1989. Amended Complaint ¶ 5.

Westmore knew about Rashad's condition when it hired him as a commercial trucker. The company approved his initial request to bring crutches into the cab to help him walk and generally get around outside the truck. Sur-reply (DN 39-3) at 4. From his start date in March 2023 until May 2023, Rashad faced no issues with his working conditions. *See id.* at 5.

That changed after Rashad suffered some sort of workplace leg injury on May 29, 2023. Although his filings are short on details, Rashad's injured leg caused him extreme pain and discomfort even when sitting in the truck cab. Sur-reply (DN 39-4) at 2. The injury aggravated his preexisting lymphedema and limited his ability to drive in the same truck without new accommodations. Response (DN 33) at 5. To deal with his pain and limitations, the day after his injury Rashad requested two accommodations: a modified (or different) truck cab and an altered work schedule. *See* Co-worker Affidavit (DN 39-2) at 3; Doctor Affidavit (39-4) at 2.

While his accommodations request was pending, Rashad continued to work under his previous schedule and working conditions. Amended Complaint ¶¶ 8, 10. After nearly two weeks passed, he asked his supervisor for an update on the status of the accommodations request. ¶ 9. The same day, the update arrived—but not as Rashad had hoped. Westmore's owner and CEO, Michael Tomasek, called Rashad personally to fire him—effective immediately. *Id.* Rashad alleges that Tomasek gave him a pretextual explanation for the firing, but doesn't include in his pleadings what reasons were in fact offered or what facts suggest pretext. ¶ 18.

## C. Futility

Even if amendment is procedurally palatable, courts nevertheless should deny leave to file an amendment that would be substantively futile. *Doe v. Michigan State Univ.*, 989 F.3d 418, 427 (6th Cir. 2021). Westmore's motion seeks to dismiss all three claims in the prior complaint under Federal Rule 12(b)(6).

Under that provision, a court "must construe the complaint in the light most favorable to plaintiffs," *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007), "accept all well-pled factual allegations as true," *id.*, and determine whether the "complaint … states a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Pleading facts "merely consistent with a defendant's liability" or facts that don't "permit the court to infer more than the mere possibility of misconduct" doesn't suffice. *Id.* at 679 (internal quotation marks omitted). Westmore's motion to strike clearly implies that Rashad's claims fail as legally insufficient regardless of whether the sur-reply exhibits are considered. In other words, that any such amendment would be futile. Westmore is right—but only in part.

### 1. ADA Discrimination

Rashad's first claim asserts discrimination under the ADA, which can take one of two forms: wrongful termination or failure to accommodate.[3] *See Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020). Qualifying disabilities for either theory include "[a]ny physiological disorder or condition … or anatomical loss affecting one or more body systems," 29 C.F.R. § 1630.2(h)(1), and must "substantially limi[t] one or more of [the plaintiff's] major life activities," 29 C.F.R. § 1630.2(g)(1)(i).

Wrongful termination under the ADA requires the plaintiff to plead "facts that make plausible the inference that (1) [he] is disabled, (2) [he] is qualified to perform [his] job requirements with or without reasonable accommodation, and (3) [he] would not have been discharged but for the disability." *Id.*

A failure-to-accommodate claim, by contrast, requires that "(1) he is disabled under the ADA; (2) he is otherwise qualified for the position, with or without a reasonable accommodation; (3) his employer knew or had reason to know of his disability; (4) he requested a reasonable accommodation; and (5) the employer failed

---

[3] Rashad does not address this distinction. His amended complaint appears to reflect the elements of a wrongful-termination claim more closely than those of an accommodation claim. *See* Amended Complaint ¶ 20. But his allegations are conceptually consistent with either. Rashad may therefore plead either theory, or both theories, in an amended complaint.

4

to provide the reasonable accommodation." *Aldini v. Kroger Co. of Michigan*, 628 F. App'x 347, 351 (6th Cir. 2015).

The filings leave considerable uncertainty about Rashad's alleged disability. He identifies both a preexisting condition (lymphedema—diagnosed in 2006) *and* an aggravating injury (a leg injury of unspecified origin or nature—suffered in May 2023). Amended Complaint ¶¶ 6–7. Rashad's response to the motion to dismiss asserts that the May 2023 injury "exacerbated the symptoms" of his preexisting lymphedema: an ongoing (and exacerbated) disability that affects his ability to "walk, stand, [and] bend." Response (DN 33) at 5. Rashad allegedly continued working under normal conditions for two weeks after his May 2023 injury, Amended Complaint ¶ 10, implying that he is qualified to perform the job with or without accommodations. Although Rashad's allegation of his disability could certainly be made clearer in a subsequent amended complaint, his current discussion at least shows amendment would not necessarily be futile.

Causation is the closest call for his claim of wrongful termination. Without the information included in the sur-reply exhibits, Rashad might fall short. Firing an employee without cause only two weeks after he requested accommodations—and on the same day that he asked for an update—is, at a minimum, concerning. But temporal proximity standing alone is not necessarily enough to plead causation. *See A.C. ex rel. J.C. v. Shelby County Bd. of Educ.* 711 F.3d 687, 699 (6th Cir. 2013) ("Temporal proximity can often help meet this causal burden, and where the adverse action comes 'very close in time' after the exercise of protected activity, 'such temporal proximity'" may be "'significant enough' to meet the burden alone[.]") (citations omitted). Outside of the "rare cases" where termination "swiftly and immediately" follows protected activity, "the employee must couple temporal proximity with other evidence of [discrimination] to establish causality." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). This might well be one of those rare cases. Regardless, Rashad's claim would at least be bolstered by the additional facts first alleged in the sur-reply exhibits. So permitting Rashad to amend his complaint to bolster his wrongful-termination claim would not necessarily be futile.

Nor would permitting an amendment to refine a possible failure-to-accommodate claim. This requires the additional elements that an employer knew or had reason to know of the employee's disability, that the employee requested a reasonable accommodation, and that the employer failed to provide the reasonable accommodation. *Aldini*, 628 F. App'x at 351.

Rashad says he told Westmore about his lymphedema. *See* Response (DN 33) at 5. Then he alleges that Westmore elected to fire him instead of providing any accommodation. *See* Amended Complaint ¶¶ 8–9. True, whether Rashad actually requested a reasonable accommodation remains unclear. And an ADA plaintiff

5

pursuing a failure-to-accommodate theory must plead enough to allow the inference that the requested accommodations were reasonable and would "permit [the employee] to effectively perform the essential functions of [his] job." *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 763 (6th Cir. 2015). Rashad's response (though not his operative complaint) identifies a series of requested accommodations: a modified or part-time work schedule, new or modified equipment or policies, and a general catch-all request to make "existing facilities within Westmore accessible." Response (DN 33) at 8. Whether he did in fact request these, and whether any would amount to a reasonable request, are not squarely before the Court at this point. But neither does their fuzziness, at this preliminary stage, obviously doom an attempt to amend. So Rashad may pursue a failure-to-accommodate claim in an amended complaint.

### 2. Racial Discrimination – Title VII

Rashad, an African American man, also accuses Westmore of discriminating on the basis of race in violation of Title VII. Amended Complaint ¶¶ 21–23. Under Title VII, an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

A Title VII claim requires the plaintiff to show that: "1) he is a member of a protected class; 2) was qualified for the job; 3) he suffered an adverse employment decision; and 4) was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *Newman v. Federal Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001). These allegations must include more than "naked assertions devoid of further factual enhancement." *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (internal quotation marks omitted).

Rashad has pled enough for the first three elements, but he alleges no facts that if proven would show differential treatment on the basis of his race. He identifies nothing about his replacement or any similarly situated employees of a non-protected class. Nor anything (beyond his own belief) suggesting the termination was racially driven. So his alleged count of racial discrimination under Title VII fails to state a claim upon which relief can be granted. And because none of the briefing arguments or sur-reply exhibits bolster this theory, either, amendment would be futile. The Court's permission to amend thus does not extend to the racial-discrimination claim: Westmore's argument for dismissal of the racial-discrimination claim is well taken, so Rashad's implicit request to amend fails (as futile) with respect to this claim.

### 3. Retaliation – KCRA

Finally, Rashad brings a claim against Westmore of retaliation in violation of the KCRA. Amended Complaint ¶¶ 24–27. Rashad cites only the portions of the KCRA outlining the statute's purpose. *See id.* (citing Ky. Rev. Stat. Ann. § 344.020).

6

Based on his factual allegations, however, the Court construes this as a claim under the statute's anti-retaliation provision. *See* Ky. Rev. Stat. Ann. § 344.280 ("It shall be an unlawful practice … [t]o retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this chapter.").

A plaintiff pleading retaliation must plausibly allege facts supporting the inference that: "(1) he … engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action." *Niswander v. Cincinnati Insurance Co.*, 529 F.3d 714, 720 (6th Cir. 2008). As discussed above in connection with his ADA claim, the requested accommodation and its connection to his termination remain unclear from Rashad's filings. But accommodation and causation do not appear implausible depending on how Rashad re-pleads his case. So the Court declines to foreclose amendment of this claim.

## ORDER

The Court denies Westmore's motion to strike (DN 40), construes Rashad's sur-reply (DN 39) as a motion for leave to amend, grants that motion in part with respect to the ADA and retaliation claims, and denies it in part with respect to the racial-discrimination claim. The Court further orders Rashad to file a second amended complaint within 40 days of this order and denies as moot Westmore's motion to dismiss the amended complaint (DN 31).

Benjamin Beaton, District Judge
United States District Court

September 29, 2025